GEORGE J. NORTON *vs.* RUFUS W. ADAMS.

PROVIDENCE—APRIL 12, 1902.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Police Constables. Chief of Police of East Providence. Tenure of Office. Removal.*

Pub. Laws cap. 964, February, 1872, authorized the town of East Providence to provide for a day and night police. The town passed an ordinance which provided: "The permanent police force shall consist of a chief and such number of police constables as may be required by the laws of the state, the ordinances of the town," etc. "The officers of the police force shall consist of a chief of police," etc. By Pub. Laws cap. 964, cited above, the town council was given power to remove all officers by them appointed, "for misconduct or incapacity, at any regular meeting." Respondent was elected chief of police in November, 1901. At a regular meeting of the town council April 2, 1902, respondent was removed from his office by a vote of the council, by reason of incapacity due to increasing age and physical defect:—

*Held*, that, under Pub. Laws cap. 964, respondent was not a mere police constable, but a member of a paid force similar to those in cities, and the office of chief of police was made a new and distinct town office.

*Held*, further, that his tenure of office was not that of police constables under Gen. Laws cap. 40, § 34, but that of town officers under Gen. Laws cap. 39, § 19, "until the next annual election of town officers, and thereafter until their successors shall be lawfully qualified to act."

*Held*, further, that while respondent could be removed, under Pub. Laws

7

cap. 964, for cause, it could only be done after charges properly made against him and a trial had thereon.

*Held*, further, that respondent was illegally removed.

QUO WARRANTO. The facts are stated fully in the opinion. Heard on petition for writ, and petition dismissed.

STINESS, C. J. Pub. Laws cap. 964, February, 1872, authorized the towns of Westerly and East Providence to provide for a day and night police. Accordingly an ordinance was passed by the town of East Providence, which provided : "The permanent police force of the town shall consist of a chief of police and such number of police constables as may be required by the laws of the State, the ordinances of the town," etc. "The officers of the police force shall consist of a chief of police," etc.

"The chief of police shall be at the head of the police department and shall have precedence and entire control of the department, its officers and members, when engaged in the service of the town. He shall devote his entire time to the affairs of the town," etc.

This officer was not a mere police constable, but a member of a paid force, similar to those in cities, and the office of chief of police was thereby made a new and distinct town office.

His tenure of office is not that of police constables, who continue in office "during the pleasure of the town council and no longer." Gen. Laws cap. 40, § 34. It must therefore be that of town officers, since no other term is fixed. Gen. Laws cap. 39, § 19, fixes the term of such officers "until the next annual election of town officers, and thereafter until their successors shall be lawfully qualified to act ; unless it is expressly provided to the contrary."

Consequently the election of the respondent Adams in November, 1901, was according to this provision.

But Pub. Laws cap. 964, cited above, gave to the town councils the right to remove all officers by them appointed, "for misconduct or incapacity, at any regular meeting."

Acting under this authority, the record of a regular meeting of the town of East Providence, held April 2, 1902, shows

the following entry, which the agreed statement of facts states was passed as a vote : "I hereby move that under section 2, chapter 964, of the State laws, relating to East Providence, Rufus W. Adams, by reason of incapacity due to increasing age and physical defect, be removed from the positions of police constable, chief of police," etc.

In the same form the complainant was elected.

Without doubt the intent of this informal record was to remove the respondent from his office.

While, as we have stated, the term of office is until the next annual election, an officer may be removed for either of the causes set out in the statute.

The respondent objects to this action, for want of charges and notice to the respondent and a hearing thereon.

In some city charters, *e. g.*, that of the city of Central Falls, *Lowrey* v. *Central Falls,* 23 R. I. 354, and that of Pawtucket, *Reynolds* v. *Pawtucket*, 23 R. I. 370, it is expressly provided that all removals of officers of the paid police department shall be "upon charges made in writing and of which the officer complained of shall have had notice in writing and an opportunity to be heard thereon."

The act in question does not contain such a provision, but we do not think that the omission is significant.

In *Reynolds* v. *Pawtucket, supra*, we said : "A trial of an officer upon charges is analogous to a criminal complaint to this extent, at least—that the accused should be informed of the charge so that he may know beforehand what the particular offence is with which he is charged and be able to prepare his defence." Upon this ground, in *Maroney* v. *Pawtucket*, 19 R. I. 3, where a vote was passed removing an assessor of taxes from office, with no notice to him so that he could be heard on the question of his removal, the proceeding was quashed. See also Mechem on Pub. Off. § 454 ; Beach Pub. Corp. § 189 ; Throop Pub. Off. § 354.

There is a significant difference between the power of removal of police constables and members of a paid police department. The former, as we have seen, may be removed at the pleasure of the council and without cause stated. It is

an office without salary and without regular duties, other than the keeping of the peace and the power to arrest, which do not ordinarily interfere with one's time or occupation. Many may be appointed for an emergency and then dismissed, as their tenure is simply during the pleasure of the council. But a paid police department is different, because its members are required to give their entire time to its duties and may be obliged to serve both day and night. Such a department requires a more certain tenure for its officers, in order to secure proper men for its efficiency.

Hence, the power of removal is limited to a removal for cause, as, in this case, for misconduct or incapacity. This being so, it is immaterial whether the statute says that charges must be made in writing and a trial had, because if these causes do not exist the removal is illegal and the aggrieved party has the right to be heard in court. But a court could not say in any case whether the removal was legal or illegal without a statement of the grounds on which the removal is based, and the facts which show it. It must appear that the action was justifiable under the law. This can only appear by facts produced at a hearing ; so that a power to remove for the two causes named implies charges and a hearing as clearly as though they were expressly required. If a town council can remove an officer simply by their own votes that he is guilty of misconduct or incapacity, and their action is final, this is equivalent to a removal at their pleasure ; for a court would be unable to know whether they had properly found the cause to exist or not. Of course, the council is to judge of the facts, but facts amounting to misconduct or incapacity must appear, and they can only so appear when there is testimony to support them which the accused has had the chance to rebut.

For these reasons we think that the attempted removal of the respondent Adams was illegal, and that he still holds the office of chief of police of the town of East Providence.

*Franklin P. Owen*, for petitioner.

*John P. Beagan and William C. Bliss*, for respondent.