**Alfredine SCHIAVULLI**

v.

**John J. AUBIN et al.**

**Civ. A. No. 76–0373.**

United States District Court,
D. Rhode Island.

Dec. 17, 1980.

Thomas E. Wright, Warren, R. I., for plaintiff.

Robert S. Ciresi, North Providence, R. I., for defendants.

## MEMORANDUM AND ORDER

PETTINE, Chief Judge.

In this action, a former North Providence, Rhode Island school teacher claims that her dismissal in early 1971 deprived her of liberty and property without due process of law in violation of the Fourteenth Amendment to the United States Constitution. The action arises under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. The determinative issue is whether the doctrine of res judicata bars plaintiff's action in this Court. Because plaintiff already has received a full and fair opportunity to litigate her claims against defendant School Committee of North Providence in the Rhode Island administrative and judicial system, and because plaintiff has been afforded back pay and conditional reinstatement pursuant to the state determinations, I hereby dismiss this action insofar as it involves members of the School Committee. However, because the former Superintendent of the North Providence Schools was not a party to and was not in privity with a party to the state proceedings, I conclude that res judicata does not bar plaintiff's claims against him.

## FACTUAL AND PROCEDURAL BACKGROUND

Prior to the 1970–71 school year, plaintiff taught for thirteen years in the North Providence School District. During the summer recess of 1970 she was informed by the certification section of the Rhode Island Board of Regents that her teaching certification would not be renewed because she had failed to present proof of successful completion of six semester hours of study called for by local regulations. Responding to this notification, plaintiff conferred with the Superintendent of Schools and requested a leave of absence from her teaching assignment during the first half of the 1970–71 school year for the purpose of completing the certification requirements. The Superintendent informed her that he would notify the local School Committee of her request and asked that she reduce such request to writing. Plaintiff then wrote a letter requesting a temporary leave of absence and delivered it to the Superintendent. Assuming that the Superintendent had taken care of her request, and because she was never advised to the contrary, plaintiff did not report to her assigned classroom when the school year began. Instead, she began a course of study designed to satisfy the requirements for renewal of her teaching certificate.

Upon completion of the necessary educational regimen, and after reacquiring her teaching certificate, plaintiff returned to her Superintendent and requested a teaching assignment for the final half of the 1970–71 school year. After a period of inaction on the part of the Superintendent and the School Committee regarding her request, plaintiff's union filed a grievance on her behalf. Ultimately the School Committee refused to reassign plaintiff on

grounds that she left her assignment without first receiving approval of her request for a leave of absence. Pursuant to R.I. G.L. § 16–13–4 plaintiff appealed this decision, first, to the State Commissioner of Education, second, to the Board of Regents of Education, and, then, to the Rhode Island Superior Court. All of these tribunals affirmed the School Committee's refusal to reassign. Finally, upon appeal of the Superior Court decision to the Rhode Island Supreme Court, plaintiff obtained a reversal of the decision of the local School Committee. The Rhode Island Supreme Court ruled that, as a matter of state law, the School Committee was estopped to deny the validity of plaintiff's absence from school during the first half of the 1970–71 school year. Hence, upon her return, plaintiff should have been treated like any other teacher returning from an authorized leave of absence. *Schiavulli v. School Committee of the Town of North Providence*, 114 R.I. 443, 451, 334 A.2d 416, 420 (1975) (Schiavulli I). Accordingly, the Supreme Court remanded the action to the Superior Court for appropriate action. After a further series of remands, the case was scheduled for hearing before the Rhode Island Associate Commissioner of Education. After a full evidentiary hearing, the Commissioner held that upon acquisition of a valid teaching certificate, plaintiff was to be reinstated as a teacher in the North Providence School District and awarded back pay of $54,448.65 for the years during which, but for the School Committee's original inaction, she could have been teaching in the district. The Commissioner did not grant plaintiff's request for damages for mental, emotional and physical distress; for exemplary damages, for counsel fees, or for interest on the money due her. Upon receipt of the Commissioner's decision, plaintiff commenced

this action in Federal Court alleging that by refusing to reassign her to a teaching position in 1971, the School Committee and the Superintendent of Schools deprived her of certain constitutional rights. Concurrently with the commencement of the Federal action, plaintiff appealed the Commissioner's decision and award to the Rhode Island Superior Court. In 1978, the Superior Court upheld the Commissioner's action, *Schiavulli v. School Committee of the Town of North Providence*, No. 72–1773 (Schiavulli II), and in 1979, the Supreme Court of Rhode Island denied certiorari.

## DISCUSSION

The crucial issue in this proceeding reduces itself to the question whether plaintiff, having run the State's procedural gamut not once, but twice, now may litigate in this Court her claim that the *original* actions of Superintendent of the North Providence schools and of the North Providence School Committee—terminating her employment relationship with the North Providence School District—deprived her of rights afforded by the United States Constitution.

■ Cases addressing the issue in this circuit have held that, even in the context of § 1983 actions, res judicata bars the relitigation in federal court of all grounds for relief that might have been, but were not, raised in prior state proceedings. *See Fernandez v. Trias Monge*, 586 F.2d 848, 854 (1st Cir. 1978); *Ramirez Pluguez v. Cole*, 571 F.2d 70, 71 (1st Cir. 1978) (per curiam); *Lovely v. LaLiberte*, 498 F.2d 1261, 1263–64 (1st Cir.), *cert. denied*, 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974). This line of precedent accords fully with the traditional application of the doctrine of res judicata by Rhode Island courts,[1] and with the apparent position of

---

1. Logically, the question of whether a prior state court judgment bars an action in federal court should begin with an inquiry into which law of res judicata applies. In this case, the court's jurisdiction rests on the presence of a federal question under 42 *U.S.C.* § 1983. It would seem, then, that because this is not an action in diversity, general federal principles would govern the applicability of the doctrine

of res judicata. This simple answer, however, becomes clouded upon recognition that another statute, 28 U.S.C. § 1738, arguably provides the rule of decision regarding the conclusive effect of prior state court judgments. This statute provides, in pertinent part, that:

[J]udicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law

the United States Supreme Court that the doctrine applies "fully" in § 1983 cases. *Preiser v. Rodriguez*, 411 U.S. 475, 497, 93 S.Ct. 1827, 1840, 36 L.Ed.2d 439 (1973).[2]

To decide if res judicata bars relitigation in this case, I must determine whether the traditional criteria for its application have been met. The Supreme Court of the United States has stated:

> The general rule of res judicata applies to repetitive suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195. The judgment puts an end to the cause of action, which cannot again be brought into litigation between

the parties upon any ground whatever
. . . .

*Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). *See Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979) (discussing res judicata and collateral estoppel).

Hence, in deciding whether the prior state determination bars the § 1983 action in this Court, I must decide 1) whether the first and second actions involve the same parties, or their privies; 2) whether the first and second actions comprise the same cause of action; and 3) whether a court of competent jurisdiction has entered a final judgment on the merits of the cause of action. If plaintiff's successive suits satisfy these prerequisites, she will be barred from raising, in her federal court action, any matter that was or might have been raised in the state proceedings.

Plaintiff asserts constitutional claims against members of the School Committee of North Providence as well as against the former Superintendent of the North Providence Schools, Mr. John Maguire. For pur-

---

or usage in the courts of such [s]tate . . . from which they are taken.

Some courts have construed this language to require the application of state law standards of res judicata in determining the conclusive effect of a prior state court judgment, even in federal question cases. *See Winters v. Lavine*, 574 F.2d 46, 54 (2d Cir. 1978); *Mitchell v. Nat'l Broadcasting Co.*, 553 F.2d 265, 274 (2d Cir. 1977). In this circuit, however, courts have frequently disposed of § 1983 actions based on facts litigated in prior state court actions without mentioning the implications of 28 U.S.C. § 1738. *See, e. g., Sylvander v. New England Home for Little Wanderers*, 584 F.2d 1103, 1108 (1st Cir. 1978) (discussing § 1738 in general, but not considering whether the statute affects choice of res judicata law.); *Ramirez Pluguez v. Cole*, 571 F.2d 70, 71 (1st Cir. 1978); *Lovely v. LaLiberte*, 498 F.2d 1261, 1263 (1st Cir. 1974); *Green v. Truman*, 459 F.Supp. 342, 345–46 (D.Mass.1978). In these cases, the courts seemed to apply what one commentator has called a "general federal law of res judicata." Developments in the Law—Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1334 (1977).

Without deciding whether Rhode Island principles of res judicata apply to this case, I note that Rhode Island courts apply the broad for-

mulation of res judicata that encompasses all matters that *might* have been raised in a prior action as well as those that were actually raised. *See Zalobowski v. New England Teamsters, Etc.*, 410 A.2d 436, 437 (R.I.1980); *R. A. Beaufort & Sons, Inc. v. Trivisonno*, 403 A.2d 664, 667 (R.I.1979); *Molony & Rubien Construction Co. v. Segrella*, 373 A.2d 816, 819 (R.I.1977); *Armstrong v. Armstrong*, 117 R.I. 83, 362 A.2d 147, 149 (1976). In cases similar to the one at hand, this circuit has applied the same standard. Hence, it is unnecessary to rule on the question of which law governs in this case: Rhode Island law and the "general federal law" mandate the same result.

2. The United States Court of Appeals for the Second Circuit has been reluctant to apply fully the doctrine of res judicata to actions brought in federal court under § 1983. *See Lombard v. Board of Education of City of New York*, 502 F.2d 631, 635 (2d Cir. 1974); *Winters v. Lavine*, 574 F.2d 46, 54–60 (2d Cir. 1978) (avoiding application of "Draconian" formulation of doctrine, but applying collateral estoppel to reach same result). This circuit, however, has displayed no such reluctance. *See, e. g., Ramirez Pluguez v. Cole*, 571 F.2d at 71; *Lovely v. LaLiberte*, 498 F.2d at 1263.

poses of analyzing the res judicata implications of plaintiff's action, I will first discuss her claim against the School Committee members, and then her claim against Mr. Maguire.

## PLAINTIFF'S ACTION AGAINST THE SCHOOL COMMITTEE MEMBERS

■ Plaintiff's action against the School Committee clearly involves the same parties that were implicated in the previous state proceedings. Plaintiff does not dispute this and, in fact, admits it in her brief.

Furthermore, insofar as they concern actions of the School Committee members, plaintiff's successive suits arose from the same cause of action. The state and the federal actions involve the "same operative nucleus of fact." *Lovely v. LaLiberte*, 498 F.2d at 1263; *see Fernandez v. Trias Monge*, 586 F.2d at 854 (two actions involving "identical facts"). In her § 1983 action, plaintiff seeks to recover for the identical School Committee actions that were the subject of the previous state administrative and judicial proceedings. In the action currently pending before this Court, plaintiff merely alters her theory of recovery from a theory grounded in state law, to a theory grounded in the United States Constitution. This alteration of the theory of recovery does not render the federal action a different cause of action from that presented to and adjudicated by the state system. *See Ramirez Pluguez v. Cole*, 571 F.2d at 71; *accord Scoggin v. Schrunk*, 522 F.2d 436, 437 (9th Cir.), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1975); *Spence v. Latting*, 512 F.2d 93, 98 (10th Cir.), *cert. denied*, 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975).

Lastly, a court of competent jurisdiction has made a final determination on the merits of plaintiff's claim. The Rhode Island Superior Court, in *Schiavulli II, supra,* considered multiple aspects of the Commissioner of Education's award of backpay and conditional reinstatement and affirmed such award in all respects. In light of this affirmance and the subsequent denial of a writ of certiorari by the Rhode Island Supreme Court, I conclude that the state courts have reached a final judgment on the merits of plaintiff's cause of action against the School Committee.

Because the prerequisites for application of res judicata to plaintiff's action against the School Committee defendants have been met, and because plaintiff did not in fact raise her constitutional claims in the state proceedings, the next question must be whether plaintiff *might* have raised such claims before the state tribunals. If she could not have raised her constitutional claims in the prior action, the doctrine of res judicata will not operate as a bar to her action in federal court. However, if the constitutional elements of her claim could have been considered in the state proceedings, the doctrine will bar plaintiff from now litigating such issues in this Court.

Determining whether plaintiff might have raised her constitutional claims in the prior action requires recognition that the action rose through successive stages of the state administrative appeal system before it was reviewed in the state judicial system.[3] Rhode Island law does not provide a definitive answer to the question whether plaintiff could have raised her constitutional claims before the administrative bodies themselves.[4] It is clear, however, that

---

**3.** In cases concerning the dismissal of a tenured teacher, R.I.G.L. § 16–13–4 provides that, from a decision of the local school board, a dissatisfied teacher may appeal first to the Commissioner of Education, then to the Board of Regents of Education, and, lastly, to the state Superior Court. *See Jacob v. Burke*, 110 R.I. 661, 296 A.2d 456 (1972). From the decision of the Superior Court, the teacher may petition for certiorari before the state Supreme Court. *See Schiavulli v. School Committee of the*

*Town of North Providence*, 114 R.I. 443, 334 A.2d 416 (1975).

**4.** R.I.G.L. § 16–13–4 provides that a teacher may request a hearing before the local school board, that counsel may be present at such hearing and that a full record of the hearing shall be kept and made available to the teacher. Section 16–49–6(8)(h) invests the Commissioner of Education with power to hear an appeal of the decision reached by the local committee. Section 16–39–2 requires that, on appeal, the Commissioner conduct a de novo hearing. *See*

plaintiff could have raised her constitutional claim before the Rhode Island courts upon review of the administrative actions, and that such claims could have been considered on the merits.[5] See Barber v. Exeter-West Greenwich School Committee, R.I., 418 A.2d 13, 19–20 (1980); cf. Lynch v. Gontarz, R.I., 386 A.2d 184, 187–88 (1978) (court considered constitutional claims of former executive director of State Municipal Police Training School).

It appears, therefore, that as to the School Committee defendants, this case satisfies all of the prerequisites for application of the doctrine of res judicata. To allow plaintiff to raise issues which she had a full and fair opportunity to raise in a prior proceeding on the same cause of action, would defeat the policy underpinnings of the doctrine of res judicata. Instead of bringing litigation to an end, such an approach would provide litigants with an opportunity to harass their opponents and to hamper the judicial system notwithstanding prior satisfaction of their claims. I recognize that one of the goals of Congress in enacting 42 U.S.C. § 1983 was to provide litigants with a federal forum in which to litigate their constitutional claims. My decision, however, does not preclude a litigant from bringing an action in federal court after the alleged deprivation. Because a claimant need not exhaust her state administrative remedies prior to instituting an action in federal court under § 1983, see Steffel v. Thompson, 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974); Panzarella v. Boyle, 406 F.Supp. 787, 794 (D.R.I.1975), the federal forum intended by Congress is always open to a litigant such as plaintiff in this case. Plaintiff chose to litigate her cause of action against the School Committee members in the state administrative and judicial systems, not in the federal courts. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Slattery v. School Committee of Cranston, 116 R.I. 252, 354 A.2d 741, 747 (1976). As the final step in the state administrative regime, § 16–49–4(9)(h) provides that the Board of Regents may "decide and determine appeals from decisions of the commissioner [of education]." Under the authority of R.I.G.L. § 16–39–3, however, the scope of such review has been limited to the question whether the Commissioner's decision was "patently 'arbitrary, discriminatory, or unfair.'" Altman v. School Committee of the Town of Scituate, 115 R.I. 399, 347 A.2d 37, 40 (1975). In another context, this limited scope of review led me to conclude that "[t]he Board of Regents is incompetent to decide ... constitutional questions." Members of Jamestown School Committee v. Schmidt, 427 F.Supp. 1338, 1345 (D.R.I.1977) (ruling that Rhode Island statute providing transportation for sectarian school pupils violated Establishment Clause of the First Amendment). That determination, however, did not establish the permissible scope of the de novo hearing conducted by the Commissioner of Education upon appeal from the decision of the local school board. I leave the determination of such question for another time because, as discussed in the text of this opinion, I conclude that plaintiff could have raised her constitutional claims before the state courts upon appeal from the administrative determination.

5. The question of the scope of review applied to an action that has risen through the state administrative appeal system pursuant to R.I. G.L. § 16–13–4 would seem to be readily resolvable by reference to the state Administrative Procedures Act, § 42–35–15. However, when the Rhode Island legislature created the Board of Regents, it expressly excluded decisions of the Board from the provisions of the state APA, § 16–49–12. Subsequently, the Rhode Island Supreme Court has honored this exclusion to the letter, holding that actions taken by the Board of Regents of Education are not reviewable under provisions of the state APA. See Latham v. State Department of Education, 116 R.I. 245, 249, 355 A.2d 400, 402 (1976). This position, however, has not stopped Rhode Island Courts from reviewing actions of Board of Regents that are appealed under § 16–13–4. However, in reviewing such actions the court has had to create its own appellate rules and mechanisms. Thus, the Rhode Island Supreme Court has created a specific appellate procedure for use under § 16–13–4, see Schiavulli v. School Committee of Town of North Providence, 114 R.I. 443, 334 A.2d 416 (1975); Jacob v. Burke, 110 R.I. 661, 296 A.2d 456 (1972), and has stated that appeals from decisions of the Board of Regents must be taken within a "reasonable time". See Latham v. State Department of Education, 116 R.I. at 250. The Rhode Island Supreme Court has also considered the merits of a teacher's procedural due process claim upon appeal, pursuant to R.I.G.L. § 16–13–4, from a decision of the Board of Regents of Education. See Barber v. Exeter-West Greenwich School Committee, R.I., 418 A.2d 13 (1980).

She did not seek to preserve her constitutional claims for a later federal adjudication, nor did she end up in the state system because of abstention on the part of the federal court. *See England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). As this Circuit has stated: "it is axiomatic that state courts are bound to uphold the Constitution with the same vigilance as the federal courts." *Sylvander v. New England Home for Little Wanderers,* 584 F.2d 1103, 1108 (1st Cir. 1978); *see Fortune v. Mulherrin,* 533 F.2d 21, 22 (1st Cir. 1976) (noting the "mistaken belief" that the federal courts "are the ultimate resolvers of all wrongs": "state courts are competent to decide federal questions, including constitutional questions").[6]

## PLAINTIFF'S ACTION AGAINST THE SCHOOL SUPERINTENDENT

In her section 1983 action, plaintiff also seeks recovery from former Superintendent of Schools, John Maguire. Because Mr. Maguire was not a party to the prior state proceedings and because he was not a privy of any of the other parties, res judicata cannot operate as a bar to plaintiff's action against him. See J. Moore & T. Currier, 1B Moore's Federal Practice par. 0.411[1] (1980). Mr. Maguire's status as a non-party to the previous action also means that plaintiff cannot utilize collateral estoppel to preclude relitigation of facts resolved in her favor in the previous proceedings. To allow the use of offensive collateral estoppel in such case would deprive Mr. Maguire of due process as he has not yet had an opportunity to be heard in this matter. *See Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 327, n.7, 99 S.Ct. 645, 649, n.7, 58 L.Ed.2d 552; *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971).

I note that the pleadings submitted by plaintiff do not set forth the exact nature of the claims against Mr. Maguire. Plaintiff's complaint indicates only that Mr. Maguire served as a conduit for plaintiff's requests to the School Committee of North Providence. With regard to the refusal to reassign, it appears that plaintiff's dispute was more with the School Committee than with Mr. Maguire. Further, it appears that even if plaintiff can prove that Mr. Maguire violated her due process rights and even if a good faith defense is unavailable to him, *see Wood v. Strickland,* 420 U.S. 308, 315–22, 95 S.Ct. 992, 997–1000, 43 L.Ed.2d 214 (1975), plaintiff may have difficulty establishing that she is entitled to any more damages

---

**6.** Just prior to publication of this opinion, the Supreme Court decided *Allen v. McCurry,* —— U.S. ——, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In *Allen,* the Court considered the collateral estoppel effect of a state court ruling under the fourth and fourteenth amendments on a subsequent federal court action under 42 U.S.C. § 1983. Defendant was convicted in state court for possession of heroin and assault with intent to kill. In a pre-trial suppression hearing, the trial judge excluded some evidence from trial, but permitted the introduction of certain other evidence taken from defendant. After conviction, defendant was barred, under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), from habeas corpus relief because he did not assert that the state court denied him a "full and fair opportunity" to litigate his fourth amendment claim. Therefore, defendant brought an action under 42 U.S.C. § 1983 seeking $1 million in damages for the alleged unconstitutional search and seizure.

In holding that the doctrine of collateral estoppel barred relitigation of defendant's fourth amendment claims, the Supreme Court affirmed what it had implied in *Preiser v. Rodriguez,* 411 U.S. 475, 497, 93 S.Ct. 1827, 1840, 36 L.Ed.2d 439 (1973): that "res judicata principles fully apply to civil suits brought under [42 U.S.C. § 1983]." —— U.S. ——, 101 S.Ct. at 416. The Court found that "the legislative history of § 1983 does not in any clear way suggest that Congress intended to repeal or restrict the traditional doctrines of preclusion." *Id.* at 417, 101 S.Ct. at ——. The Court also concluded that *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), "lends no strength to any argument that Congress intended to allow relitigation of federal issues decided after a full and fair hearing in a state court . . . ." —— U.S. at ——, 101 S.Ct. at 418.

Based on a careful reading of *Allen,* I have concluded that it reinforces what I have said in the text of this opinion. I note, however, that the Supreme Court did not decide the exact question presented in this case, and, in fact, expressly reserved resolution of such question for another time. *Id.* at 416 n.10.

than she has already received through state judicial and administrative proceedings. In *Carey v. Piphus*, 435 U.S. 247, 261–64, 98 S.Ct. 1042, 1051–52, 55 L.Ed.2d 252 (1978), the Supreme Court specifically rejected the argument that damages should be presumed to flow from a violation of procedural due process. Furthermore, without expressing any opinion I note that the action against Mr. Maguire may be barred by the statute of limitations. *See Walden III Inc. v. State of Rhode Island*, 442 F.Supp. 1168 (D.R.I.1977) *aff'd* 576 F.2d 945 (1st Cir. 1978).

In light of the above, I dismiss, with prejudice, plaintiff's claims against the members of the School Committee of North Providence; the claims against Mr. Maguire, I dismiss without prejudice reserving to the plaintiff the right to file an amended complaint within 10 days of the date of this order.

It is so ordered.